Henry Zooloomian v. Commissioner.
Zooloomian v. Commissioner
Docket No. 3136-67.
United States Tax Court
T.C. Memo 1969-107; 1969 Tax Ct. Memo LEXIS 190; 28 T.C.M. (CCH) 572; T.C.M. (RIA) 69107; May 21, 1969, Filed *190 Henry Zooloomian, pro se, 115 Sinclair Ave., Providence, R. I. Robert B. Dugan, for the respondent. 573 IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent redetermined a deficiency in income tax of the petitioner for the taxable year 1964 in the amount of $473.35. The only issue presented is whether petitioner is entitled to reduce income from wagering by losses claimed to have occurred during the taxable year 1964. [1]
Petitioner was employed as a school teacher at an annual salary of $5,897.72 for the taxable year in question. Though he attended several racetrack meets during the early part of 1964, he did not become a frequent patron of racetracks and heavy bettor until the commencement of the fall meet of Narragansett racetrack sometime late in October of that year. At one of these racing meets, held on November 25, 1964, petitioner experienced sizable winnings and received *191 a U.S. information return (Form 1099) from the Narragansett Racing Association, Inc., indicating that $1,955 had been distributed to petitioner during the taxable year 1964. This amount was reported on petitioner's tax return for the year 1964. No other income from racetrack wagering was reported by petitioner on his 1964 tax return even though he experienced income from wagering in excess of the amount disclosed on the Form 1099. Petitioner did not keep records of the amounts of his wagers but claimed a deduction on his return in the amount of $1,895 as gambling losses which respondent disallowed in full for lack of substantiation. Petitioner also claimed as a deduction on his return interest expense totaling $511.72 for the taxable year 1964. Though petitioner maintained no record of his total winnings or losses for the year in question, he attempted to support his claimed losses by presenting a schedule of horses which he wagered on during the 1964 fall meet at Narragansett racetrack. He reconstructed the schedule approximately three years after the meet by reviewing the race results in back issues of a Providence newspaper. [2] Petitioner's reconstruction of the horses bet on *192 is based on the newspaper report of the horse which was the first out of the starting gate. The horse wagered on at the time of the race was selected by use of a so-called "speed system" of betting. This system requires the bettor to be at the betting window when the race starts. An accomplice with binoculars, who is stationed at a vantage point, signals the bettor as to the first horse out of the starting gate, and the bettor attempts to place a bet on that horse before the window closes. Opinion Petitioner's reconstruction is based on several weak assumptions. The first being that the horse bet on was almost always the one which the newspaper reported as the first out of the starting gate. This in turn is dependent upon the tenuous assumption that the accomplice correctly determined the first horse out, and that the petitioner, if he were the bettor, correctly interpreted the signal given by the accomplice. Lastly, we must assume that the amounts allegedly bet were accurately recollected by petitioner since no satisfactory explanation was given as to how petitioner reconstructed *193 the dollar amount of the various wagers set forth in his reconstruction table. Petitioner's reconstruction table indicates that wagers were made in amounts of $30, $40, $50, $60, $100 and $200. Petitioner testified that under his reconstruction if the newspaper indicated that the horse selected won the race, the wager would be doubled in the following race. He stated that where there was a winning race he would automatically double the wager in the next race. However, as stated, no explanation was given of how petitioner determined (at the time the table was prepared) if the original bet was $30, $40, $50, $60, $100 or $200. Nor were any witnesses produced to confirm petitioner's story. The petitioner has the burden of proving that losses claimed were in fact sustained. The issue is a factual one and is to be decided on the basis of the evidence adduced. See e.g., (C.A. 6, 1956), affirming per curiam a Memorandum Opinion of this Court. In the instant proceeding, petitioner has attempted to 574 sustain this burden by a reconstruction of his betting activities for the taxable year in question three years after they took place. It is our belief, *194 however, that this form of proof is fraught with uncertainty and must be accorded little, if any, evidentiary weight. We do not deny the existence of the "speed system" of racetrack wagering. We merely question the efficacy of any computation which without corroboration presumes to reconstruct a three-year-old pattern of wagering along with specific amounts wagered [3] during the period covered by the reconstruction. Without additional proof substantiating the amounts petitioner wagered during the more than 200 races which are included in his reconstruction, his method of reconstruction must fall for want of substantiality. This would be so even if we were to assume arguendo that (a) petitioner always used the "speed system" when placing bets and (b) his accomplice, if it were his function, always or nearly always signaled the horse which did, in fact, leave the gate first and (c) petitioner, if he were the bettor, correctly interpreted the signal. Petitioner also contends that the instant case presents an obvious situation for the employment of the rule laid down in (C.A. 2, 1930). It is asserted *195 by petitioner that the plight of a horseplayer is to lose money and that he could not possibly have experienced the winnings declared on his return without experiencing losses commensurate with or in excess of the amount won. We agree with petitioner that it is unlikely that he would have been able to carry on extensive betting activities during the 1964 fall meet of Narragansett racetrack without losing at least some of the bets which he made. Notwithstanding our willingness to agree to this dolorous fact of race track life, we feel that the facts of the instant case preclude the application of the rule laid down in Petitioner admitted at trial that he had "other winnings in the year 1964." Since the amount of such winnings was not reported on petitioner's income tax return for 1964 and since such amount was not disclosed at trial, there is no way for us to determine the amount of petitioner's unreported income from wagering for the taxable year 1964. This being so, the case at bar closely parallels (C.A. 1, 1966), affirming per curiam a Memorandum Opinion of this Court. In Donovan the *196 taxpayer kept no record of his wins or losses, and as in the instant case the taxpayer testified that he had other winnings in addition to the amounts reported on his return. In disallowing all of the claimed gambling losses the Circuit Court upheld our determination that: In the absence of adequate records of either his wins or losses, we are unable to say that such other [unreported] winnings were not equal to or in excess of his losses. [4]
We hold that the reasoning of the Donovan decision is binding on the case at bar. In addition to the fact that petitioner experienced unreported winnings so as to bring this case within the rationale of the Donovan case, our decison is also influenced by the fact that the amount reflected on the Form 1099 issued by Narragansett racetrack represented the return on money which had been used for the purchase of one betting ticket. [5] This indicates that the income from gambling declared on petitioner's return does not reflect an aggregate of several smaller amounts won over a period of time. It simply reflects the return on one bet. What petitioner's winnings were prior to and subsequent to the day *197 he experienced this sizable betting victory is simply a matter of conjecture. Hence, in the absence of proof to the contrary, there is no reason to assume that winnings for these two intervals did not in fact equal or exceed the gambling losses claimed by the petitioner. Petitioner has offered no evidence to refute this assumption. The fact that petitioner reported interest expense of $511.72 on his 1964 tax return does not alter our conclusions. Petitioner argues that such interest expense is evidence of the fact that his net worth for 1964 declined and that he, therefore, could not have had gambling winnings in excess of his losses for that year. However, no evidence of petitioner's assets or liabilities or personal expenditures was presented to establish his net worth at any time during 575 the taxable year 1964. Nor did he present any evidence as to the dates the loans were secured. The presence of the interest deductions alone gives no indication of net worth. Accordingly, it is our finding that this argument must be rejected. Decision will be entered for the respondent. *198 Footnotes
1. All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended. SEC. 165. LOSSES. * * * (d) Wagering Losses. - Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
2. Petitioner began compiling the reconstruction in April 1967 and completed it in February 1968.↩
3. See footnote 2, supra.↩
4. .↩
5. Presumably the ticket in question bore the winning "twin double" combination for November 25, 1964.↩